UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

EMMANUEL ELLUL, et al.,

        - against -

CONGREGATION OF
CHRISTIAN BROTHERS, et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 23, 2011

09 Civ. 10590 (PAC)

OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

      The Congregation of Christian Brothers ("CCB") and Order of the Sisters of Mercy ("OSM"; collectively, "Defendants")[1] move to dismiss the class action complaint of Emmanuel Ellul, Valerie Carmack, and Hazel Goulding (collectively, "Plaintiffs"), which alleges violations of the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS").[2] Starting in the 1940s and continuing for decades thereafter, children were taken from the United Kingdom and Malta to orphanages and work camps in Australia. While the program was created by the Australian government, the children were treated shamelessly, abused, and neglected, subjected to forced labor, and denied education. Based on this conduct, Plaintiffs allege (1) breaches of customary international law, including child trafficking, slavery, involuntary servitude, forced child labor, and cruel, inhuman, and degrading treatment or punishment; and (2) common law claims for conversion, unjust enrichment, constructive trust, accounting, and breach of fiduciary and/or special duty. (Compl. ¶ 4).

---

[1] Plaintiffs voluntarily dismissed their complaint against Mercy International Association following the pre-motion conference.
[2] The ATS provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. The "law of nations" is synonymous with "customary international law." Flores v. S. Peru Copper Corp., 414 F.3d 233, 237 & n.2, 247 (2d Cir. 2003).

CCB moves under Fed. R. Civ. P. 12(b) to dismiss because (1) the Court lacks subject matter jurisdiction; (2) the Court lacks personal jurisdiction over CCB; (3) CCB is not a proper defendant and has not been properly served with the summons and complaint; and (4) all of the Plaintiffs' purported claims are barred by the applicable statutes of limitation. (CCB, Mem. in Supp. 2). OSM brings a motion to dismiss or for summary judgment on the grounds that (1) OSM is not a legal entity and lacks capacity to be sued; (2) the claims are barred by the statute of limitations; (3) Goulding, the only plaintiff suing OSM, fails to state claim under the ATS; and (4) even if she did state a claim, it should be dismissed for forum non conveniens. Finally, Plaintiffs cross-move for alternative service of process, for discovery under Fed. R. Civ. P. 56(f), and to strike the Local Civil Rule 56.1 Statement and declaration submitted by OSM.

The Court GRANTS Defendants' motions to dismiss. OSM is not a legal entity. CCB was improperly served; is outside the Court's personal jurisdiction; and is not the same entity alleged to have committed the acts alleged in the complaint. In addition, the claims are barred by the statute of limitations. In light of this disposition, the Court does not consider whether there has been a violation of customary international law; or whether the claims would survive a forum non conveniens analysis.

**I.  Facts[3]**

Emmanuel Ellul, Valerie M. Carmack, and Hazel Goulding each claim that as young children they were removed from their native lands and transported halfway around the world to Australia, where they were badly mistreated. The conduct occurred pursuant to the plan set forth in the Immigration (Guardianship of Children) Act of 1946, enacted by Australia's Commonwealth Government as part of the Government's "White Australia Policy" officially adopted in 1901. (Compl. ¶¶ 56, 60). In 2001, the Australian Senate investigated the abuse

---

[3] Unless otherwise noted, all facts are taken from the Complaint.

which occurred and published its findings in a report entitled "Lost Innocents—Righting the Record" ("2001 Report"). On November 15, 2009, the Australian Prime Minister formally apologized for his government's role. (Id. ¶ 3).

## II.     Procedural History

Plaintiffs contend that the Court has jurisdiction under the Alien Tort Statute, 28 U.S.C. § 1350 because they are aliens or nonresidents of the United States who allege grave violations of the specific, universal, and obligatory norms of customary international law. Plaintiffs maintain that the Court has personal jurisdiction over CCB because it resides or does business in New York State; has purposely availed itself of New York law; and owns property in this judicial district. (Id. ¶¶ 6, 7). They contend that OSM is a "single 'pontifical' entity" unified by the common mission of charity. (Mem. in Opp. 18). Finally, they argue that it was not until 2001 when they had the information to reasonably discover their injury and causes of action against these Defendants.

CCB denies any participation in the alleged child trafficking and forced labor scheme, as well as any minimum contacts with New York State. OSM argues that it is not a legal entity and cannot be sued. Both maintain that the alleged claims are untimely; have no nexus to the United States; and did not violate international law when they occurred. If they are to be tried anywhere, they contend, Australia should be the trial site.

## III.    Discussion

### a.  Wrong Defendants Named

#### i.  Failure to Serve CCB and Lack of Personal Jurisdiction

Plaintiffs named the wrong association of Christian Brothers, and then served an entirely different association of Christian Brothers. Their mistake is more than "semantic," as they

argue.  (Mem. in Opp. 14).  CCB is an unincorporated association based in Rome, Italy, one of several separate juridic entities serving different provinces around the world, each one legally distinct from the others.  (CCB, Mem. in Supp. 3; Reply Mem. 4-5).  Plaintiffs did not make service in Rome.  Rather service was made on the "Congregation of Christian Brothers – North American Province" in Elizabeth, New Jersey and New Rochelle, New York.  The Congregation of Christian Brothers of North America is a separate entity, and distinct from the Congregation of Christian Brothers of Rome.  Plaintiffs do not refute CCB's argument that it does not maintain offices or conduct business in New Jersey or New York; and that it is not affiliated with any schools in New York or associated with the New Jersey.  In any event, the Complaint's allegations deal with a separate juridical entity located in Australia, called "Christian Brothers Oceania."  (CCB, Mem. in Supp. 4 (citing the Code of Canon Law)). That entity is separate and apart from the entities in Rome and North America.  While Plaintiffs maintain that CCB controls all Christian Brothers communities, there is no evidence or allegation that the Australian organization of Christian Brothers was acting under the control or authority of the Rome organization when the conduct occurred.  Service on the North American province is not good service on CCB (Rome), which is a separate entity from the Christian Brothers Oceania which may have committed wrongs in Australia.  Plaintiffs' claims against CCB are dismissed.

### ii. OSM's Capacity to be Sued

OSM argues that it is not a legal entity and cannot be sued.  "Both capacity to be sued and legal existence are prerequisites to the suability of an entity . . . ."  Roby v. Corporation of Lloyd's, 796 F. Supp. 103, 110 (S.D.N.Y. 1992), aff'd, 996 F.2d 1353 (2d Cir. 1993); see United Mine Workers v. Coronado Coal Co., 259 U.S. 344, 351 (1922) ("It is well settled that it must appear that an association, if it is not a corporation, has received by appropriate legislation a

legal status before it, or its members, may be sued in the name of the group."). Fed. R. Civ. P. 17(b) provides for capacity to sue or be sued for individuals, corporations, and

> (3) for all other parties, by the law of the state where the court is located, except that: (A) a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws

The complaint alleges that OSM is a religious order of nuns founded in Dublin, Ireland in 1831, but does not claim that it is a legal entity. (Compl. ¶ 47). As explained by affidavit, there are nine regional Sisters of Mercy organizations throughout the world with separate, autonomous legal governance structures. (McDermott Decl. ¶ 3). Unlike other hierarchically-structured Roman Catholic orders, with a central governance authority, "Sisters of Mercy" is a generic term used to describe vowed religious women who serve throughout the world as members of one of the nine autonomous organizations. (Id.). While these regional organizations are capable of being sued, "OSM" must be dismissed from this lawsuit because it is not an organization with a structure and purpose to act as an entity. Plaintiffs offer nothing to refute the fact that there is no legal entity, unincorporated or otherwise, called the "Order of the Sisters of Mercy," except for a decision by the Sacred Congregation of the Roman Catholic Church that OSM is organized under "pontifical right." This, however, is a religious determination, not a legal ruling. In addition, the common purpose to which Plaintiffs point—charity—is too vague to unify these regional organizations into a single legal entity. See Klinghoffer v. S.N.C. Achille Lauro, 739 F. Supp. 854, 858 (S.D.N.Y. 1990) (holding that persons united in a common enterprise must be "using certain methods" to constitute an unincorporated business association), vacated on other grounds, 937 F.2d 44 (2d Cir. 1991).

In addition, as with CCB, Plaintiffs served the North American Sisters of Mercy, not the Australian organization alleged to have committed these acts. Service on the North American Sisters of Mercy does not create jurisdiction over the entity in Australia.

### b. Statute of Limitations

The statute of limitations affirmative defense normally cannot be decided on a motion to dismiss. In re S. African Apartheid Litig., 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009). "However, 'an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.'" Id.; see McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004) (statute of limitations bar warrants 12(b)(6) dismissal "if the defense appears on the face of the complaint").

The statute of limitations under the ATS, borrowed from the Torture Victim Protection Act, is ten years. See, e.g., Papa v. United States, 281 F.3d 1004, 1012 (9th Cir. 2002); Doe v. Karadzic, 93 Civ. 878(PKL), 2000 WL 763851, at *1 n.3 (S.D.N.Y. June 13, 2000). Since the conduct alleged commenced more than sixty years ago, it has expired. The pendent state law claims are also untimely. A three year statute of limitations applies to conversion claims, Sporn v. MCA Records, Inc., 448 N.E.2d 1324, 1326-27 (N.Y. 1983); and six years for unjust enrichment, constructive trust, accounting, and breach of fiduciary duty. Itakura v. Primavera Galleries Inc., 2009 WL 1873530, at *2 (S.D.N.Y. June 30, 2009); Ciccone v. Hersh, 530 F. Supp. 2d 574, 579 (S.D.N.Y. 2008), aff'd, 320 Fed. Appx. 48 (2d Cir. 2009).

The cause of action accrues when the plaintiff knows or has reason to know of the injury forming the basis of the action. See In re World War II Era Japanese Forced Labor Litig., 164 F. Supp. 2d 1160, 1180-81 (N.D. Cal. 2001). Although Plaintiffs' claims accrued decades ago, an exception may be made if they "would reasonably have had difficulty

6

discerning the fact or cause of injury at the time it was inflicted." Kronisch v. United States, 150 F.3d 112, 121 (2d Cir. 1998). The standard for discovery is not high; it only requires,

> knowledge of, or knowledge that could lead to, the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it . . . . [A] plaintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim. Rather, a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice.

Id. (quoting Guccione v. United States, 670 F. Supp. 527, 536 (S.D.N.Y.1987)). Here, Plaintiffs have long known of the basic facts of their injuries and claims for damages. None of them had to wait until the 2001 Report, each of the plaintiffs had actual knowledge of nearly all of the facts supporting their ATS claims for decades. See Guccione v. United States, 670 F. Supp. 527, 536 (S.D.N.Y. 1987), aff'd, 847 F.2d 1031 (2d Cir. 1988). Indeed, they provided the testimony that resulted in this Report, and their personal experiences and recollections form the factual basis for the present claims.

Additionally, equitable tolling is appropriate only in rare and exceptional circumstances, in which a party is "prevented in some extraordinary way from exercising [their] rights." Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996); see also Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). Nothing in the record supports a suggestion that Plaintiffs were continuously denied access to any adequate justice system or prevented by a fear of retaliation. See S. Rep. No. 102-249, at 10-11 (1991). Rather, they have long know about the factual basis for this action. Even if documents may have been withheld from Plaintiffs, none was essential to commencing this lawsuit. See Deutsch v. Turner Corp., 324 F.3d 692 (9th Cir. 2003); Van Tu v. Koster, 364 F.3d 1196, 1200 (10th Cir. 2004). The cases Plaintiffs rely on are inapposite. Thompson v. Metro. Life

7

Ins. Co., 149 F. Supp. 2d 38 (S.D.N.Y. 2001); Bodner v. Banque Paribas, 114 F. Supp. 2d 117 (E.D.N.Y. 2000). They considered claims in which unknown assets were looted and the plaintiffs were unaware of any injury. Here, there was no concealment; Plaintiffs knew at all times what their injuries were and how they occurred.

Finally, equitable estoppel is not appropriate for the facts alleged. "Unlike equitable tolling, which is invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment, equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit." Cerbone v. Int'l Ladies' Garment Workers' Union, 768 F.2d 45, 49-50 (2d Cir. 1985). One example is where the defendant causes the late filing by falsely promising not to plead the statute of limitations as a defense. See, e.g., Cada v. Baxter Healthcare Corp., 920 F.2d 446 (7th Cir. 1990). Because the records withheld were not necessary to commence this lawsuit, Plaintiffs have alleged no facts to support a claim of equitable estoppel.

## IV.   Conclusion

The Court has no jurisdiction over either Defendant, and the case against each must be dismissed. Furthermore, the proposed action is barred by the applicable statute of limitations. The Clerk of the Court is directed to terminate this case.

Dated: New York, New York
       March 23, 2011

SO ORDERED

*[signature]*
PAUL A. CROTTY
United States District Judge